UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAZA SIDDIQUI,

        Plaintiff,

      v.

PATRICK KEATING, CHARLIE BRAICO,
NABET-CWA, and COMMUNICATIONS
WORKERS OF AMERICA,

        Defendants.

No. 24 CV 564

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Raza Siddiqui was elected president of his local union in 2022. Shortly after, defendant NABET-CWA placed the local under trusteeship on the petition of defendant Patrick Keating, another union member and Siddiqui's political opponent. Siddiqui successfully challenged the trusteeship, and he was reinstated as the local president in August 2023. Less than two months later, Keating petitioned defendant Communications Workers of America to place the local under a second trusteeship. The CWA executive board, including defendant Charlie Braico, unanimously voted in favor of a trusteeship. Siddiqui challenges the propriety of the second trusteeship and seeks damages stemming from both trusteeships under Title I and Title III of the Labor Management Reporting and Disclosure Act. He also brings claims of tortious interference and civil conspiracy against Braico and Keating. Defendants move to dismiss Siddiqui's claims.

## I.     Legal Standard

When reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a court accepts all well-pled allegations as true and draws all reasonable inferences in favor of the plaintiff. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). "To survive a motion to dismiss, a plaintiff must plead 'only enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.     Facts

Plaintiff Raza Siddiqui was elected president of his local union, NABET-CWA Local 54041, in March 2022. [1] ¶¶ 1, 14.[1] Siddiqui was part of a slate that opposed the existing leadership, including defendant Patrick Keating and defendant Charlie Braico, called Team Solidarity. [1] ¶¶ 15–17. Braico, along with other past local presidents, endorsed Keating, who ran for treasurer, and campaigned against Siddiqui. [1] ¶¶ 16–17. Siddiqui and his slate defeated the Team Solidarity slate. [1] ¶ 17.

The defendants and their allies refused to accept the outcome of the election and waged a campaign to oust Siddiqui. [1] ¶¶ 3, 18. Keating and others in the old guard obstructed Siddiqui's transition to power. [1] ¶ 43. Keating tried to extort

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [1] ¶ 1. The facts are taken from Siddiqui's complaint, [1]. The parties attach evidence outside of the pleadings to their briefs. I do not consider this evidence here. *See Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018) ("Generally, a district court cannot consider evidence outside the pleadings to decide a motion to dismiss without converting it into a motion for summary judgment.")

conditions from Siddiqui as part of the transition for his own personal benefit. [1] ¶ 44. For example, Keating tried to keep a paid position within the local, to pick who could hold certain roles, and to fix the line of pre-ordained succession on the bargaining committee and as grievance chair. [1] ¶ 46. Keating tried to extract promises that Siddiqui would not run or support another candidate in upcoming NABET-CWA elections, in which Keating was planning to run. [1] ¶ 47.

When defendant Communications Workers of America sought to audit the local under Siddiqui, the local's lawyer documented the extent of the obstructionism faced by Siddiqui's administration. [1] ¶ 49. Keating refused to give access to the local's accounts, and the local's prior attorney and defendant NABET-CWA refused to assist. [1] ¶ 50. The local's former president, who had been Keating's running mate, kept a laptop belonging to the local and when he returned it, the hard drive had been wiped, making the data likely unretrievable. [1] ¶¶ 51–53. It took two months for Siddiqui to gain access to important accounts because of this interference. [1] ¶ 50.

Upon a petition signed by Keating and others, NABET-CWA, led by Braico, placed the local into a trusteeship in September 2022. [1] ¶ 54. Keating and a former administrator were brought back to run the local. [1] ¶ 55. During the trusteeship, changes were made to the local's membership database, some of which were contrary to past practice under the local's constitution and bylaws. [1] ¶¶ 56–57. These changes affected the eligibility of members to vote—Siddiqui believes that these changes were made to gerrymander future elections by removing members supportive

of Siddiqui from the voter rolls and adding members favorable to the Team Solidarity slate. [1] ¶¶ 56, 58.

Siddiqui and other union members brought a lawsuit against NABET-CWA and Braico, in his official capacity, to challenge the trusteeship under Title III of the LMRDA. 22-cv-5732, [9]. In December 2022, a federal court entered a temporary restraining order dissolving the trusteeship, on the basis that it was imposed in bad faith. 22-cv-5732, [40]. The court dissolved the trusteeship by a permanent injunction on August 30, 2023. 22-cv-5732, [80].

The pattern of intentional actions to undermine Siddiqui's ability to govern the local continued after the termination of the first trusteeship. [1] ¶¶ 61–62. Upon Siddiqui's reinstatement, the administrator returned the local's laptop with deleted and corrupted files and data. [1] ¶ 60. Keating, Braico, and their allies waged a non-stop campaign of charges and appeals against Siddiqui and sought to disqualify him from office by any means. [1] ¶ 63. They also used NABET-CWA's procedural mechanisms to stop Siddiqui from implementing his leadership and to override the actions of the local's executive board when they were against Keating and Braico's interests. [1] ¶ 64.

Less than two months after the dissolution of the first trusteeship, Keating petitioned the CWA to place the local under trusteeship. [1] ¶ 25. Keating said that a second trusteeship was necessary because the local posted a net lost of $162,753.45 for the period March 2023–September 2023. [1] ¶ 27. The expenditures causing that loss were due to a historic number of contract negotiations and were taken while the

first trusteeship was preliminarily enjoined. [1] ¶ 28. Running a deficit in a year that has multiple contract negotiations is not uncommon for a labor union. [1] ¶ 29. Other CWA locals have run similar deficits without being trusteed. *Id.* The deficit was also caused by costs related to defendants' own conduct bringing and maintaining an unlawful trusteeship. [1] ¶ 31.

Keating's petition also said that the local had inappropriately approved to pay Siddiqui's legal fees from the first lawsuit. [1] ¶ 32. Siddiqui alleges this act was legitimate—the board's decision was by majority vote, without Siddiqui's participation, and in furtherance of the local's welfare as the lawsuit provided a common benefit to all the local's members by restoring its democratic leadership. [1] ¶¶ 32–33. At the time of this decision, a petition remained pending in the lawsuit over the first trusteeship for the full amount of fees, with the expectation that those fees would be reimbursed to the local. [1] ¶ 34.

Keating also said that the local failed to complete audit reviews when its treasurers resigned in April 2022 and December 2022. [1] ¶ 35. Keating complained that the local's treasurer ran a QuickBooks report instead of including the required itemized list of expenditures. [1] ¶ 36.

The CWA executive board approved Keating's trusteeship petition one week after receipt. [1] ¶ 39. The CWA imposed the trusteeship by unanimous vote without any written reasoning or a prior hearing, so it is unclear what weight or importance the CWA gave to any of Keating's complaints. [1] ¶ 38. Siddiqui objected to the trusteeship and a hearing was held beginning January 23, 2024. [1] ¶¶ 40–41.

Defendants also attempted to paper over the trusteeship by holding new elections and disqualifying Siddiqui from running in those elections. [1] ¶ 67.

## III.  Analysis

### A.  Title III Claim

Siddiqui challenges the second trusteeship as unlawful under Title III of the LMRDA. "Congress passed the LMRDA out of concern with widespread abuses of power by union leadership." *Vought v. Wisconsin Teamsters Joint Council No. 39*, 558 F.3d 617, 621 (7th Cir. 2009) (quoting *Finnegan v. Leu*, 456 U.S. 431, 435 (1982)). The Act's primary objective is to "ensur[e] that unions [are] democratically governed and responsive to the will of their memberships." *Finnegan*, 456 U.S. at 436.

Title III provides that a labor organization can establish and administer a trusteeship "over a subordinate body" only in certain, enumerated circumstances, such as to "correct[ ] corruption or financial malpractice." 29 U.S.C. § 462. A properly imposed trusteeship "shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith." 29 U.S.C. § 464(c).

A trusteeship is invalid when it was not established or administered in accordance with the constitution and bylaws of the union; or when it was not established or administered for one of the enumerated statutory purposes. *Boardman v. Serv. Emps. Int'l Union*, 89 F.4th 596, 600 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 2564 (2024). A claim that a trusteeship was retaliatory fails if there was at least one valid statutory purpose for imposing the trusteeship, even if the union which imposed

the trusteeship also had an impermissible motive. *Id.* (citing *Serafinn v. Local 722, Int'l Bhd. of Teamsters*, 597 F.3d 908, 914 (7th Cir. 2010) ("A mixed-motive theory of liability is never proper in a suit brought under the [Act].")).

Siddiqui alleges that the CWA imposed and maintained the trusteeship in bad faith and for an improper purpose—to oust Siddiqui and end his political career within the CWA and to preserve the power of Keating and Braico's political machine. [1] ¶ 76. He alleges that this was part of a retaliatory campaign against him for political speech he made during his campaign for the local's presidency. [1] ¶¶ 1, 18– 19, 72.

The CWA argues that Siddiqui has pled himself out of court because he alleges that the CWA executive board had at least one permissible ground for establishing the trusteeship—financial mismanagement. [20] at 13–14; *see* 29 U.S.C. § 462 ("financial malpractice" is a permissible purpose for imposing a trusteeship). Keating supported his petition for trusteeship by citing to the local's net loss for the period March 2023–September 2023, the local's approval of paying Siddiqui's legal fees associated with the first trusteeship, and the failure to properly audit the local's finances. [1] ¶¶ 26–27, 32, 35–36. Siddiqui alleges that it was "unclear what weight or importance the CWA gave any of Keating's complaints, because it imposed and maintained a trusteeship by unanimous vote without any written reasoning or a prior hearing." [1] ¶ 38. The trusteeship notice to the Local, attached to the complaint, stated that: "The CWA Executive Board took this action upon receipt of a petition signed by 56 Local 54041 members . . . [which] set forth examples of gross financial

mismanagement and other violations of the Local By-Laws, Sector By-Laws, and the CWA Constitution." [1-6] at 1.

But also, according to the complaint, Keating's reasons to seek the trusteeship—financial mismanagement—were pretextual. For example, the net loss was due to unprecedented numbers of contract negotiations, and it is common for local unions to run deficits during periods with multiple negotiations. [1] ¶¶ 28–30. Some of the deficit can be attributed to costs associated with the first trusteeship. [1] ¶ 31. As for the reimbursement of Siddiqui's legal fees, Siddiqui alleges that this was a legitimate decision of the local's board. [1] ¶ 33. Siddiqui was not involved in the local's decision, and his challenge of the first trusteeship provided a common benefit to all local members by restoring its democratic leadership. [1] ¶¶ 32–33. Siddiqui alleges that Keating's objection to the audits is illusory and that proper reports were supplied. [1] ¶¶ 35–36.

Siddiqui also alleges that Braico and Keating both held retaliatory animus against him. [1] ¶¶ 61–64, 72, 95–98. Braico and Keating allegedly waged a non-stop campaign of charges and appeals against Siddiqui, seeking to disqualify him from office by any means. [1] ¶¶ 63–67. But while Siddiqui alleges that Keating petitioned and Braico voted for the trusteeship with retaliatory motives, he has not alleged facts that support an inference that the CWA's other executive board members also voted for the trusteeship in bad faith. He does not allege that the other board members knew that Keating's allegations of financial mismanagement were pretextual, were aware that Keating and Braico sought the trusteeship for retaliatory purposes, nor

harbored retaliatory intent themselves. Siddiqui argues that Braico, the current head of NABET-CWA, inherently exercised power over the CWA board and that it is reasonable to infer that he convinced other board members to retaliate against Siddiqui. [28] at 3–4. But Siddiqui's allegations do not support that Braico swayed other members, affected their decision-making, or conspired with them to retaliate against Siddiqui through imposing the trusteeship.

Out of eighteen board members, Siddiqui only alleges one had retaliatory intent when voting on the second trusteeship. This is not enough to reasonably infer that the trusteeship was imposed in bad faith. Siddiqui alleges that the CWA board voted to impose the trusteeship based on Keating's petition which laid out financial mismanagement. Without any facts to support that the other seventeen board members held retaliatory intent, it is reasonable to infer that these members took Keating's petition at face value and imposed a trusteeship to correct financial mismanagement. Siddiqui does not argue that a trusteeship imposed to correct financial mismanagement violates the local's constitution or bylaws. *See* [28] at 10–12. Even where improper motives may be present, "one proper purpose suffices to uphold the trusteeship." *Boardman*, 89 F.4th at 602. Siddiqui's Title III claim is dismissed without prejudice.[2]

## B.    Title I Claims

Title I of the LMRDA "provides union members with an exhaustive 'Bill of Rights' enforceable in federal court." *Loc. No. 82, Furniture & Piano Moving,*

---

[2] *See Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).

*Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 536 (1984). "Title I is designed to guarantee every union member . . . freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Id.* at 536–37; *see also Vought*, 558 F.3d at 621.

Siddiqui alleges that defendants twice placed the local in trusteeship and terminated his elected position as the president in retaliation for opposing Braico and Keating's slate. [1] ¶¶ 3, 18–21, 25, 39. He seeks damages for removal from office under Title I related to both trusteeships. [1] ¶¶ 69–73. Section 101(a)(2) of LMRDA provides:

> Every member of any labor right organization shall have the right to . . . express any views, arguments, or opinions; and to express at meetings of the labor organization his views . . . upon candidates in an election of the labor organization . . . subject to the organization's established and reasonable rules pertaining to the conduct of meetings.

29 U.S.C. § 411(a)(2). To succeed under Title I, Siddiqui "must establish: (1) he engaged in protected expression; (2) he was subjected to an adverse action reasonably likely to deter future expression; and (3) that action was caused by the protected expression." *Marshall v. Loc. 701 Int'l Bhd. of Elec. Workers*, 387 F.App'x 623, 627–28 (7th Cir. 2010) (citing *Sheet Metal Workers' Int'l. Ass'n v. Lynn*, 488 U.S. 347, 354 (1989)).

When a violation of rights protected by Title I is alleged to have resulted from the establishment of a trusteeship, a plaintiff must first adequately plead that the trusteeship was unlawfully established. *See Boardman*, 89 F.4th at 602 ("And because Boardman's Title I claims rest on the assertion that the trusteeship was invalid, her remaining claims fail as well."). As discussed above, Siddiqui has failed

10

to allege that the trusteeship was improperly imposed or imposed in retaliation for Siddiqui's protected activities. Because Siddiqui's Title I claims derive from the assertion that the second trusteeship was improper, and he has not stated a claim under Title III, his Title I claim fails. Siddiqui's Title I claims based on the second trusteeship are dismissed without prejudice.

Siddiqui also brings Title I claims based on the first trusteeship against NABET-CWA and Braico.[3] Defendants argue that claim preclusion bars Siddiqui's claims against them. [14] at 10. In federal court, claim preclusion has "three elements: (1) an identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suits' operative facts)." *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). When it applies, the doctrine prevents relitigating claims already litigated and claims that could have been litigated but were not. *Id.* Claim preclusion is an affirmative defense and best addressed on a Rule 12(c) motion for judgment on the pleadings. *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 n.2 (7th Cir. 2014). But when the complaint and judicially noticed record establish the facts to prove preclusion, dismissal under Rule 12(b)(6) is appropriate. *Id.*; *Berry v. Wells Fargo Bank, N.A.*, 865 F.3d 880, 882–83 (7th Cir. 2017) (upholding Rule 12(b)(6) dismissal based on preclusion because "the district court [had] everything it needed in order to be able to rule on the defense.").

---

[3] Siddiqui's complaint is unclear whether he brings his Title I claim against the CWA based on the first trusteeship. According to his allegations, the first trusteeship was imposed by NABET-CWA, and he does not allege any facts the create a plausible inference that CWA was involved in the first trusteeship. *See* [1] ¶¶ 5, 19. Nor did Siddiqui name the CWA as a party in the first litigation. *See* 22-cv-5732, [9], [9-1]. To the extent that Siddiqui's Title I claim against the CWA is based on the first trusteeship, it is dismissed without prejudice.

Siddiqui does not contest that there was a final judgment on the merits in the previous case nor that the suits' operative facts overlap, instead he argues that the identity of parties is not present. *See* [29] at 6–8. NABET-CWA and Braico, in his capacity as Sector President of NABET-CWA, were both named in the prior lawsuit. 22-cv-5732, [9]. Siddiqui asserts that he brought his prior Title III claim "in a derivative capacity on behalf of the Local." [29] at 6–7. There is no cause of action for individual damages under Title III, and "[a]ny right of action pursuant to [Title III] belongs to the subordinate union, and while a union member may sue to enforce the act's provisions, such suits should be limited to relief on behalf of the union." *Gesink v. Grand Lodge, Int'l Ass'n of Machinists & Aerospace Workers*, 831 F.2d 214, 216 (10th Cir. 1987). According to Siddiqui, this means that Title III claims are not brought in an individual capacity, but in a representative capacity on behalf of the local. [29] at 6–7. Here, Siddiqui brings his Title I claim as an individual, and therefore, so the argument goes, he is present in a different legal capacity and is a different party than he was in the earlier case. [29] at 7–8.

Siddiqui offers no case law to support that a union member bringing a Title III claim does not do so in their individual capacity. Even if he is correct, Siddiqui did appear in his individual capacity in the first lawsuit. Siddiqui sought to recover personal damages for himself in the first lawsuit, which are not available under Title III. 22-cv-5732, [9] at 23 (seeking reinstatement with full back pay, seniority, and benefits lost due to his removal from office); *Ross v. Hotel Emps. & Rest. Emps. Int'l Union*, 266 F.3d 236, 249–50 (3d Cir. 2001) (holding individual relief cannot be sought

under Title III); *Scott-Anderman v. Martinez*, 60 F.4th 680, 683 n.4 (D.C. Cir. 2023) ("The reinstatement of a union officer is not available relief under Title III."). Even if Siddiqui brought his Title III claim in a representative capacity, he sought individual damages against NABET-CWA and Braico in his individual capacity. Here, he is the same plaintiff seeking individual relief from the same defendants again.

Siddiqui's claim for individual damages in the first lawsuit and his Title I claim here arise out of the same set of facts. Siddiqui could have brought a Title I claim for damages resulting from the first trusteeship against NABET-CWA and Braico in the first lawsuit. But he did not. Claim preclusion "bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." *Kratville v. Runyon*, 90 F.3d 195, 197–98 (7th Cir. 1996). Siddiqui's Title I claims based on the first trusteeship are dismissed with prejudice.[4]

## C.   State Law Claims

Siddiqui brings state law claims against Keating and Braico in their individual capacities for tortious interference with prospective economic gain and civil conspiracy. [1] ¶¶ 77–99. The basis for jurisdiction over these claims is supplemental jurisdiction under 28 U.S.C. § 1367(a). [1] ¶ 13. Section 1367(c) provides that "courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When all federal claims are dismissed before

---

[4] Because Siddiqui's Title I claims based on the first trusteeship are precluded, amendment would be futile.

trial, especially at early stages, federal courts generally relinquish jurisdiction over any remaining supplemental state law claims. *Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016); *see Phillips v. Baxter*, 768 F.App'x 555, 560 (7th Cir. 2019) ("As to the state-law claims, after dismissing [plaintiff's] federal claims at such an early stage of litigation, the district court should have followed the presumption of relinquishing jurisdiction over them.").

Siddiqui's tortious interference and civil conspiracy claims are dismissed without prejudice. *See* 28 U.S.C. § 1367(c).

## IV. Conclusion

Defendants' motions to dismiss, [13], [15], [19], are granted. Plaintiff's Title III claim, Title I claims based on the second trusteeship, and state law claims are dismissed without prejudice. Plaintiff's Title I claims based on the first trusteeship are dismissed with prejudice. Plaintiff has leave to file an amended complaint by January 21, 2025. If plaintiff does not file an amended complaint, the dismissal of the federal claims without prejudice will convert to a dismissal with prejudice and the clerk will enter a final judgment terminating the case. If plaintiff files an amended complaint, the parties shall file a joint status report by January 28, 2025, proposing a schedule for responsive pleadings and discovery.


ENTER:

Manish S. Shah
United States District Judge

Date: December 23, 2024

14