UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAZA SIDDIQUI, | |
| Plaintiff, | |
| v. | No. 24 CV 564 |
| PATRICK KEATING, CHARLES BRAICO, NABET-CWA, and COMMUNICATIONS WORKERS OF AMERICA, | Judge Manish S. Shah |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Raza Siddiqui was elected president of his local union in 2022. Defendant NABET-CWA placed the local under trusteeship on the petition of defendant Patrick Keating, another union member and Siddiqui's political opponent. Siddiqui successfully challenged the trusteeship, and he was reinstated as the local president in August 2023. The local then voted to pay Siddiqui's attorney's fees for the litigation. Less than two months later, Keating petitioned defendant Communications Workers of America to place the local under a second trusteeship. The CWA executive board, including defendant Charlie Braico, voted in favor of a trusteeship and Siddiqui was removed from office again. NABET also overturned the local's decision to pay the attorney's fees and ordered Siddiqui to reimburse the local. The CWA upheld this decision. When Siddiqui did not repay the fees, NABET suspended his union membership. Siddiqui brings claims under Title I of the Labor Management Reporting and Disclosure Act alleging these actions were in retaliation

for suing to dissolve the first trusteeship and political expression. He also brings a tortious interference claim against Braico and Keating. Defendants move to dismiss.

## I. Legal Standards

When reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a court accepts all well-pled allegations as true and draws all reasonable inferences in favor of the plaintiff. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). "To survive a motion to dismiss, a plaintiff must plead 'only enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. Facts

Plaintiff Raza Siddiqui was elected president of his local union, Communications Workers of America Local 54041, in March 2022. [39] ¶¶ 5, 13.[1] Siddiqui opposed the Solidarity Slate, which included defendant Patrick Keating and defendant Charlie Braico. [39] ¶¶ 13–15. Braico, along with other past local

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [39] ¶ 1. The facts are largely taken from Siddiqui's amended complaint, [39]. The parties attach evidence outside of the pleadings to their briefs. Generally, I cannot consider such evidence on a motion to dismiss. *See Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018). But Siddiqui is permitted to attach exhibits for the first time in opposition to a Rule 12(b)(6) motion. *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 528 n.8 (7th Cir. 2015) ("a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove"). Defendants also attached exhibits to their briefing, [46-1] and [48-1], which Siddiqui relies on in his response brief. *See* [51] at 15; [52-1] at 12, 15. I consider this to be adopting these exhibits as if he were submitting them himself. Defendants' other exhibits are not so clearly central to Siddiqui's claim as to make consideration of them appropriate at this stage.

presidents, endorsed Keating, who ran for treasurer, and campaigned against Siddiqui. [39] ¶ 15. Siddiqui and his slate defeated the Solidarity Slate. [39] ¶ 16.

During the election and after, Siddiqui engaged in political speech and association against the Solidarity Slate. [39] ¶ 17. Siddiqui alleges that in response to this political activity, defendants launched and facilitated a retaliation campaign against him by: twice removing Siddiqui from office, using union resources to suspend Siddiqui's membership, and trying to impose over $90,000 in personal liability on Siddiqui. [39] ¶ 18.

Upon a petition signed by Keating and others, the local was placed into a trusteeship in September 2022, removing Siddiqui from office. [39] ¶ 21; 22-cv-5732, [9]. Siddiqui and other union members sued under Title III of the LMRDA to challenge the trusteeship. *See Siddiqui v. Nat'l Ass'n of Broad. Emps. & Technicians-Commc'ns Workers of Am.*, 132 F.4th 530, 531 (7th Cir. 2025).

While the litigation was pending, various members of the Braico political machine threatened and intimidated those challenging Braico's control. [39] ¶¶ 30–32. Braico's supporters specifically targeted Siddiqui by calling him derogatory names, referring to his executive board in demeaning terms, and thwarting his attempts to remain in good standing with the Union. [39] ¶¶ 33–34, 44–52.

In December 2022, a local staff member emailed the CWA and Braico that she had been holding a dues check for Siddiqui and asked if she should allocate the payment anywhere. [39] ¶ 54. Braico responded that he had spoken with the NABET's general counsel and determined that, "[w]e definitely **do not want to**

3

**credit any dues payments for Raza** during the period April 1, 2022, until the date we received the first cashier's check ($1200 – dated October 7, 2022) but received in the office several days later via certified mail. His dues records . . . should reflect **no dues paid** in April, May, or June. Once he went 90 days or more with no dues payment, he was automatically suspended. So effective July 1, 2022, he was automatically suspended from membership in good standing." [39] ¶¶ 55–56 (emphasis in original email). The Sector Executive Council later declared that Siddiqui was ineligible to be a delegate at the NABET Sector Conference and CWA Convention because he failed to pay dues for a period of six months in 2022, and for another three months in 2023, so was not in good standing continuously for at least one year. [39] ¶ 58.

In August 2023, the court dissolved the first trusteeship, after previously finding the trusteeship had been imposed in bad faith. *See Siddiqui v. NABET-CWA,* No. 22 C 5732, 2022 WL 17487814, at *9 (N.D. Ill. Dec. 7, 2022); and *Siddiqui*, No. 22 C 5732, Dkt. No. 80 (N.D. Ill.). Siddiqui was reinstated to his position, and the local voted to pay the attorney's fees related to that litigation on the grounds that it was a common benefit to all union members. [39] ¶¶ 60, 64; [39-2]. Siddiqui was not involved in any actions to approve this payment. [39] ¶ 64.

In October 2023, Keating successfully petitioned the CWA to place the local under trusteeship a second time, removing Siddiqui from office again. [39] ¶¶ 5, 26–27. Siddiqui alleges that Keating's reason for seeking a second trusteeship—financial mismanagement—was pretextual and false. [39] ¶¶ 23–25. Siddiqui admits that the

4

local ran a deficit under his leadership but alleges that a deficit was not abnormal and that some of the record-keeping issues raised were attributable to Keating himself. *Id.*

After the imposition of the second trusteeship, Keating successfully petitioned the Sector Executive Council to overturn the local's decision to pay Siddiqui's attorney's fees. [52-4]. The Council ordered that the legal fees should be sought from the law firm, and if that was refused, then Siddiqui would be responsible for full restitution. *Id.* Siddiqui appealed to the CWA president and executive board, both of which upheld the decision. [39-2] at 2. When Siddiqui didn't pay the fees, NABET revoked his good standing with the union. [39] ¶ 63; [39-2].

Siddiqui filed this lawsuit seeking to dissolve the second trusteeship as improperly imposed under Title III of the LMRDA and seeking damages under Title I from both the first and second trusteeship. [1]. His original complaint was dismissed for failure to state a claim, and his claims related to the first trusteeship were precluded by the first litigation. [37]. In his amended complaint, Siddiqui seeks recovery for the alleged retaliation under Title I of the LMRDA and for tortious interference with prospective economic gain. [39]. Defendants move to dismiss his amended complaint. [45], [47].

### III. Analysis

#### A. Title I

Title I of the LMRDA "provides union members with an exhaustive 'Bill of Rights' enforceable in federal court." *Loc. No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526,

5

536 (1984); 29 U.S.C. § 411(a)(2). "Title I is designed to guarantee every union member . . . freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Id.* at 536–37; *see also Vought v. Wisconsin Teamsters Joint Council No. 39*, 558 F.3d 617, 621 (7th Cir. 2009).

To state a claim under Title I, a plaintiff must allege that "(1) he engaged in protected expression; (2) he was subjected to an adverse action reasonably likely to deter future expression; and (3) that action was caused by the protected expression." *Marshall v. Loc. 701 Int'l Bhd. of Elec. Workers*, 387 Fed. App'x 623, 627–28 (7th Cir. 2010) (citing *Sheet Metal Workers' Int'l. Ass'n v. Lynn*, 488 U.S. 347, 354 (1989)).

On this motion, defendants do not contest that Siddiqui's political actions and speech opposing the existing structure and suing to dissolve the first trusteeship were expressions protected under Title I. Siddiqui alleges that defendants took three adverse actions against him: removed him from elected office as part of the second trusteeship, declared that Siddiqui repay attorney's fees related to the first litigation, and revoked his good standing with the union. All three of these actions can be considered adverse and reasonably likely to deter future expression. Defendants argue that Siddiqui has not alleged that any of these actions were caused by his protected expressions.

### 1. Removal from Office

Siddiqui's claim related to his removal from office as part of the second trusteeship was previously dismissed because Siddiqui did not adequately allege the second trusteeship was improperly imposed. [37] at 10–11. Siddiqui renews his claim

6

arguing that his removal from office can support a claim regardless of the validity of the trusteeship under Title III. [51] at 4–11.

When a violation of rights protected by Title I is alleged to have resulted from the establishment of a trusteeship, a plaintiff must also plead that the trusteeship was unlawfully established. *See Boardman v. Serv. Emps. Int'l Union*, 89 F.4th 596, 602 (7th Cir. 2023), *cert. denied,* 144 S. Ct. 2564 (2024) ("And because Boardman's Title I claims rest on the assertion that the trusteeship was invalid, her remaining claims fail as well."). Under Title III, "if at least one proper purpose for imposing it exists, a claim that the trusteeship was retaliatory fails," even if the union imposing the trusteeship also had an impermissible motive. *Id.* at 600 (citing *Serafinn v. Local 722, Int'l Bhd. of Teamsters*, 597 F.3d 908, 914 (7th Cir. 2010) ("A mixed-motive theory of liability is never proper in a suit brought under the [Act].")).

Siddiqui argues that a claim under Title I related to a trusteeship need not satisfy the Title III standard for when a trusteeship is improper and is subject to a different standard to show causation. [51] at 4–11. Siddiqui relies on *Sheet Metal Workers' International Association v. Lynn*, 488 U.S. 347 (1989), which held that Title I rights do not "fall by the wayside whenever a trusteeship is imposed" and that the removal of an elected union official by a trustee administering a trusteeship can still violate Title I. 488 U.S. at 356, 358.

While there are some factual similarities between *Lynn* and this case, there are significant differences. In *Lynn*, the trustee of a local, in the course of administering the trusteeship, removed the plaintiff from his elected business agent

7

position because he spoke in opposition to the trustee's dues proposal. 488 U.S. at 349–50. The adverse act did not relate to the establishment of the trusteeship and did not call the motives behind the trusteeship into question. Indeed, the trusteeship in *Lynn* was presumed valid. *Id.* at 356. Siddiqui's removal from office is not so easily disentangled from the validity of the trusteeship. *See* [39] ¶¶ 5, 20. Siddiqui was removed when the trusteeship was imposed, rather than by a trustee administering it. *See* [39] ¶ 20–22; [48-2]. And, despite no longer pursuing a Title III claim here, Siddiqui continues to challenge the validity of the trusteeship. *See* [39] ¶ 22 ("The second trusteeship, which Plaintiff does not seek to dissolve, was also brought in bad faith.").

This case is more like *Boardman v. Service Employees International Union*, 89 F.4th 596 (7th Cir. 2023) where a local president "was removed from her position as President by operation of the trusteeship." *See* 89 F.4th at 599. The point of the trusteeship was to take over administration of the local union from the local president. *See id.*; *see also Maher v. Int'l B'hood of Elec. Workers*, 15 F.3d 711, 714 (7th Cir. 1994) ("A trusteeship necessarily involves a curtailment of the power of a local union and its members and officers."); *Farrell v. Int'l B'hood of Teamsters*, 888 F.2d 459, 462 (6th Cir. 1989) ("The whole point of a trusteeship is that someone has judged that control of the local by a central authority is necessary."). That Siddiqui's removal was discretionary, [39] ¶ 22, does not disconnect it from the validity of the trusteeship. Siddiqui's removal can only be improper if the second trusteeship was also improper.

8

When a plaintiff maintains that a parent union is violating their Title I rights by means of a trusteeship, they cannot sue to protect those rights without addressing the question of the trusteeship's validity. *Farrell*, 888 F.2d at 461 (considering this question after *Lynn*). A valid trusteeship does not excuse the dismissal of an elected officer in reprisal for exercising his Title I free speech rights. *Lynn*, 488 U.S. at 356–58. But it does not follow that when an aggrieved union member challenges the validity of a trusteeship, they no longer need bother with the procedures prescribed in Title III. *Farrell*, 888 F.2d at 462.

Siddiqui also argues that Title III remedies do not supplant Title I under 29 U.S.C. § 466, which establishes the "rights and remedies provided by [Title III] shall be in addition to any and all other rights and remedies at law or in equity." [52-1] at 9. Siddiqui is right that if he could show that the trusteeship, inclusive of his removal, was improperly imposed, he could also seek Title I damages. But that does not mean that he may seek Title I damages without showing the trusteeship was imposed in bad faith when the adverse action calls the trusteeship's validity into question.

Siddiqui has once again pled that the CWA executive board had at least one permissible ground for establishing the second trusteeship—financial mismanagement. [39] ¶ 24; *see* 29 U.S.C. § 462 ("financial malpractice" is a permissible purpose for imposing a trusteeship). Thus, the trusteeship was valid under Title III, and by extension, so was Siddiqui's removal from office.

Even if I were to accept that Siddiqui need not show the trusteeship was invalid under Title III, he would still need to plausibly allege that the CWA's choice

9

to remove him from office was in retaliation for his protected activities. He has not remedied the deficiencies of his first complaint relating to causation. While Siddiqui alleges that Keating and Braico had retaliatory motives when seeking and voting for his removal, [39] ¶¶ 18–20, 23, he does not allege that any of the other executive board members also voted to remove him from office in bad faith. He does not allege that the other board members knew that Keating's allegations of financial mismanagement were false, were aware that Keating and Braico sought to remove him for retaliatory purposes, nor harbored retaliatory intent themselves. Siddiqui alleges that Braico had significant control over his sector and that the CWA board would defer to his decisions related to sector issues. [39] ¶¶ 39, 41–42, 44. But these allegations do not suggest that Braico swayed other members, affected their decision-making, or conspired with them to retaliate against Siddiqui through removing him from office.

Without any allegation to support that the other board members held retaliatory intent, it is unreasonable to infer that these members did not Keating's petition at face value and did not remove Siddiqui to correct financial mismanagement. Based on Siddiqui's allegations, it is not reasonable to infer that the but-for cause of his removal was his protected activity.

Siddiqui argues that even if his Title I claim against the CWA fails, he still can bring the claim against Braico and NABET. [52-1] at 10–11. In doing so, he admits that "the CWA was directly responsible for removing Siddiqui from office." *Id.* at 10. And while Siddiqui's complaint alleges that all defendants removed him from office,

10

Siddiqui relies on documents that show it was only the CWA board. [48-1] at 4; [52-1] at 15; [51] at 15. Siddiqui speculates that Braico could have been acting outside of his authority or acting in the interests of NABET, rather than in his role as a CWA board member. [52-1] at 10. Siddiqui does not make allegations that support this inference. Siddiqui has not adequately alleged that NABET or Braico, beyond being a member of the CWA board, were involved in the decision to remove him from office.

Siddiqui's Title I claims based on his removal from office as part of the second trusteeship are dismissed.

    2.  *Repayment of Attorney's Fees and Suspension of Membership*

Siddiqui's second theory of recovery is that "but for" his protected activity to seek legal dissolution of the unlawful first trusteeship, the defendants would not have declared him to owe over $90,000 in legal fees to the local. [39] ¶¶ 60–64, 71. The parties focus their briefing on whether defendants had the authority to direct Siddiqui pay back the attorney's fees. *See* [46] at 11; [52-1] at 12. But the central question for the retaliation claim is whether that decision was in response to Siddiqui's protected activity. *Marshall*, 387 Fed. App'x at 627–28.

NABET argues that the original payment of attorney's fees was improper and the Council's decision that Siddiqui must repay the fees was simply a reversal of that error. [46] at 11. Siddiqui says this non-retaliatory reason was false, but his allegations fail to support this argument. *See* [52-1] at 11–13. He does not allege, nor does the Council's notice identify, who participated in the decision of the Council, let alone that they had retaliatory intent, or knew of Keating and Braico's animus. *See* [52-4]. He has failed to state a claim on this theory against NABET and Braico.

11

As for the CWA, its involvement was limited to appellate review. *See* [39-2]. The Council's resolution does not indicate any unlawful intent in imposing the restitution. *See* [52-4]. And while the CWA president and board may have known of the local's political disputes and the invalidated first trusteeship, that does not mean that they knew of NABET's alleged unlawful intent to retaliate against Siddiqui by demanding repayment of the fees. *See Rodonich v. House Wreckers Union Loc. 95 of Laborers' Int'l Union,* 817 F.2d 967, 973 (2d Cir. 1987) ("[The] review board was also faced with evidence of a bitter factual dispute within [the local]. Certainly, [the board] was not required to accept either party's version of the events as true.").

Siddiqui adds that "but for" his protected activity to seek legal dissolution of the unlawful first trusteeship, the defendants would not have revoked his good standing in the union. [39] ¶¶ 53–59; [39-2]. NABET argues that it did not suspend Siddiqui's membership because of his lawsuit to dissolve the first trusteeship but because he failed to comply with legitimate orders of the council, the CWA president, and executive board to repay the legal fees. [46] at 9. It characterizes the revocation as a disciplinary action. [46] at 10.

Siddiqui counters that NABET's bylaws set out a procedure for imposing "discipline" and require the filing of charges, a fair trial before a body of three members of the executive board, the right to call witnesses, and mandatory pre-trial mediation. *See* [52-1] at 12 (citing [46-1] at 30–34). Nothing indicates that these procedures were followed. Siddiqui argues that this shows NABET's reason was

12

pretextual. [52-1] at 12. He also alleges that Braico conspired to harm his standing in the union in other ways, showing animus. [39] ¶¶ 30–37.

NABET's suspension of Siddiqui's membership was wrapped up with the decision that he owed the Local over $90,000. *See* [39-2]. The absence of a reasonable inference that the Council harbored retaliatory animus on the restitution issue carries over to the membership suspension. Moreover, the suspension letter does not attribute the decision to anyone specifically. *See* [39-2] at 2. Without more, retaliatory intent cannot be inferred from this collective decision made by multiple people.

Siddiqui has had two opportunities to plead a Title I claim and does not propose further amendment. The Title I claim is dismissed with prejudice.

### B. Tortious Interference

Siddiqui brings a claim for tortious interference with prospective economic gain against Keating and Braico in their individual capacities. [39] ¶¶ 73–89. The basis for jurisdiction over these claims is supplemental jurisdiction under 28 U.S.C. § 1367(a). [39] ¶ 11. Section 1367(c) provides that "courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When all federal claims are dismissed before trial, especially at early stages, federal courts generally relinquish jurisdiction over any remaining supplemental state law claims. *Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016); *see Phillips v. Baxter*, 768 Fed. App'x 555, 560 (7th Cir. 2019) ("As to the state-law claims, after dismissing [plaintiff's] federal claims at such an early stage of litigation, the district court should have followed the presumption of relinquishing

13

jurisdiction over them."). Siddiqui's tortious interference claim is dismissed without prejudice. *See* 28 U.S.C. § 1367(c).

## IV. Conclusion

Defendants' motions to dismiss, [45], [47], are granted. Plaintiff's Title I claim is dismissed with prejudice. Plaintiff's state-law claim is dismissed without prejudice. The declaratory judgment claim is dismissed without prejudice.[2] Enter judgment and terminate civil case.

ENTER:

                                                    Manish S. Shah
                                                    United States District Judge

Date: July 8, 2025

---

[2] Although not entirely duplicative of Siddiqui's other claims, the declaratory judgment claim is about whether Siddiqui owes a debt, which in turn is intertwined with Siddiqui's dispute with Keating and Braico over their campaign against him. The state-law tortious interference claim may still be litigated and a declaration about the over $90,000 debt would not resolve the parties' feud. I decline to hear the declaratory judgment claim. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites).